UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ANTHONY KOONCE<br>          Defendant. | Crim. No. 05-244 (RMU) |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S
MOTION TO SUPPRESS TANGIBLE EVIDENCE**

      The United States, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this opposition to defendant's Motion to Suppress Tangible Evidence. In support of this opposition, the United States relies on the following points and authorities and such other points and authorities as may be cited at a hearing regarding this motion.

**I.**      **Factual Background**

      The defendant is charged with Possession with Intent to Distribute Heroin, Possession with Intent to Distribute Heroin within 1,000 Feet of a School, Possession with Intent to Distribute 5 Grams or More of Cocaine Base, Possession with Intent to Distribute Cocaine Base within 1,000 Feet of a School, and Possession of Marijuana. These charges arose out of the defendant's possession of these narcotics on March 23, 2005. On that date, Officers Brian Wise and Ralph Davis, members of the Third Police District's Vice Unit, were investigating drug complaints in the Kelly Miller Housing Project, where individuals are commonly seen in the hallways and stairwells, smoking crack cocaine. As they walked out of the apartment building located at xxx x xxxxxx xxxxxx, defendant Koonce attempted to enter the building. Defendant Koonce made eye contact w. Officers Wise and Davis, who were in police uniform, and then

jumped back, pushed another individual, and started walking quickly out of the building. Officer Wise said: "hey, where are you going?" at which point, Koonce began running away at a high rate of speed.

The officers started chasing Koonce down the 400 block of W St; at some point in that block, Koonce tripped on the sidewalk and fell to the ground. Officer Wise caught up to Koonce, and a brief struggle ensued. Once the officers got Koonce to settle down, they cuffed him for their safety. During this process, Officer Davis asked defendant Koonce why he ran. Koonce responded that he thought he had a warrant for domestic violence, to which Officer Davis replied that they would get him up from the ground and check into it. Officer Davis then rolled him over to help him up from the ground. As he helped Koonce to his feet, Koonce's jacket pocket bulged open, and therein was a large chunk of suspected crack cocaine, wrapped in plastic. The officers seized the suspected crack cocaine from his pocket, and in the process, pulled out a second clear plastic bag containing tan powder, suspected to be heroin. They placed him under arrest; a search incident revealed a clear ziplock full of greed weed, suspected marijuana. Field tests confirmed the identity of these various drugs. The chunk of crack cocaine weighed 18 grams with packaging, and the heroin 11 grams. Also recovered from Koonce was $1,154. The stop took place within 1,000 feet of Gage-Eckington Elementary School.

II.     **Argument**

Defendant Koonce claims that the officers "had no justifiable reason to handcuff the Defendant and lift him off the ground," (Defendant's Motion at 2), and that therefore, the evidence seized during that "unlawful" stop must be suppressed. Because the police had reasonable suspicion that criminal activity was afoot at the time defendant Koonce ran, and then

the narcotics were seen in plain view during that legitimate stop, the seizure of the contraband was lawful. In addition, probable cause to arrest defendant Koonce developed once he began to fight with the officers, and thus, any search of the defendant would similarly be lawful as incident to arrest. For these reasons, as set forth more fully *infra*, this Court should the defendant's motion to suppress the evidence seized during this stop.

    **A.    The officers had reasonable, articulable suspicion to stop defendant Koonce.**

Terry v. Ohio, 392 U.S. 1 (1968), permits police officers to temporarily "seize" a person under certain circumstances, namely in brief encounters between a citizen and the police on public streets, which require swift action because of observations the officer has made. Id. at 20. The officer may briefly "seize," or detain, the citizen if he has a reasonable, articulable suspicion that "criminal activity may be afoot." Id. at 30. The officer need not be certain that the citizen is engaged in criminal activity; reasonable suspicion "is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence." Illinois v. Wardlow, 528 U.S. 119, 123 (2000). Thus, a Terry stop may be conducted simply "on the need to 'check out' a reasonable suspicion." United States v. Clark, 24 F.3d 299, 303 (D.C. Cir. 1994). Furthermore, a stop under Terry has occurred when either an officer physically lays a hand on an individual, or where the officer asserts his authority and the individual submits to that show of authority. California v. Hodari D., 499 U.S. 621, 627 (1991).

Because such a stop may occur on a reasonable suspicion, whether such suspicion existed in a particular situation is determined by the totality of the circumstances. Courts may not scrutinize each possible factor upon which the officer relied on in a separate and distinct manner. United States v. Sokolow, 490 U.S. 1, 8-9 (1989). "An officer on the beat does not encounter

discrete, hermetically sealed facts," and for that reason while "a single factor might not itself be sufficiently probative of wrongdoing to give rise to a reasonable suspicion, the combination of several factors – especially when viewed through the eyes of an experienced officer – may." United States v. Edmonds, 240 F.3d 55, 59-60 (D.C. Cir. 2001).

In the instant situation, Officers Davis and Wise had reasonable articulable suspicion to conduct a Terry stop of the defendant based on their observations. While investigating drug complaints in a public housing complex known for on-the-street drug sales and use, the defendant entered an apartment building, saw members of the police department, and began to behave erratically, shoving aside another individual, and then sprinting away. The officers had reason to suspect that this individual was engaged in criminal activity. When the officers asked him where he was going, he continued to run, rather than yield to their authority, stopping only when forced to do so by his own misstep. At this point, he had not "yielded to authority at all," but rather had stopped only because of a miscalculation of his footing.

Further, in terms of developing suspicion of criminal activity, the Supreme Court has held that flight from the police goes a very long way to establishing reasonable articulable suspicion for a Terry stop. In Illinois v. Wardlow, the Court found reasonable articulable suspicion where, as here, the defendant was present in a high narcotics-trafficking area, and he fled from the police. 528 U.S. 119, 124-25 (2000) ("it was not merely respondent's presence in an area of heavy narcotics trafficking that aroused the officers' suspicion, but his unprovoked flight upon noticing the police."). Based on those two factors alone, the Court found that reasonable articulable suspicion had been established for a Terry stop. Thus, in light of the totality of the circumstances, viewed through the eyes of an experienced officer, the officers had a reasonable

4

articulable suspicion to stop the defendant.[1]

Finally, because the narcotics at issue came into the officers' view as they were attempting to facilitate the stop of the defendant, they were appropriately seized. Although the Fourth Amendment is violated when property is seized in the absence of a warrant issued on the basis of probable cause, the "plain view" doctrine serves as an exception to this requirement when: (1) an officer does not "violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed"; (2) the evidence's "incriminating character" is "immediately apparent"; and (3) the officer has "a lawful right of access to the object itself." Horton v. California, 496 U.S. 128, 136-37 (1990). Here, the officers had a right to seize the narcotics which were clearly in their view, because they had a right to stop the defendant under Terry, and the evidence was very clearly narcotics, especially to trained Vice officers.

### B. The Officers Had Probable Cause to Arrest Defendant.

"Probable cause to arrest requires the existence of facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person in believing that the suspect has committed, is committing, or is about to commit an offense." United States v. Wesley, 293 F.3d 541, 545 (D.C. Cir. 2002) (quotations and citations omitted) . The probable cause standard merely requires the showing of a "fair probability" that a crime has been or is being committed. See Illinois v. Gates, 462 U.S. 213, 246 (1983) ("probable cause does not demand the certainty

---

[1] The officers also had a basis to conduct a Terry frisk on the defendant at this time: after falling to the ground of his own doing, the defendant began to scuffle with the officers as they put their hands on him; they were this justified in their concern that he "may be armed and presently dangerous." Terry, 392 U.S. at 30. These facts, however, also establish probable cause to arrest the defendant for assault on a police officer, and are thus discussed more fully in the section below.

5

we associate with formal trials[;] [i]t is enough that there was a fair probability"). If the police have probable cause for an arrest, they may make a full search of the arrestee and the area within the arrestee's immediate control at the time of the arrest. Chimel v. California, 395 U.S. 752, 763 (1969).

    Once Officer Wise attempted to stop the defendant, and the defendant fought back, there was probable cause to arrest him for the offense of assault on a police officer, and the authority, incident to his arrest, to make a full search of his person, which would have lead to the inevitable discovery of the contraband at issue in this case.

**III.     Conclusion**

WHEREFORE, the government respectfully requests that the Court deny defendant's motion to suppress statements.

                                                Respectfully submitted,

                                                KENNETH L. WAINSTEIN
                                                United States Attorney

                                                _____
                                                RACHEL CARLSON LIEBER
                                                ASSISTANT UNITED STATES ATTORNEY
                                                D.C. Bar No. 456-491
                                                U.S. Attorney's Office
                                                Organized Crime & Narcotics Trafficking Section
                                                555 4th Street, N.W., Room 4820
                                                Washington, DC 20530
                                                (202) 353-8055   FAX:  (202) 514-8707

**CERTIFICATE OF SERVICE**

    I hereby certify that a copy of the foregoing was caused to be served by electronic filing on counsel for the defendant, Christopher Davis, Esquire, this 4th day of August  2005.

                                                _____
                                                Rachel Carlson Lieber